Argued and submitted May 4, resubmitted In Banc September 9, affirmed
December 9, 1992, reconsideration denied March 17, petition for review
pending 1993

STATE OF OREGON,
*Respondent,*

*v.*

BRIAN DOUGLAS HESSEL,
*Appellant.*

(C 89-11-36474; CA A68097)

844 P2d 209

Noel Grefenson, Salem, argued the cause and filed the brief for appellant.

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, Janet A. Metcalf, Assistant Attorney General, and Robert B. Rocklin, Assistant Attorney General, Salem.

DEITS, J.

De Muniz, J., dissenting.

**DEITS, J.**

Defendant appeals his convictions on six counts of murder and two counts of aggravated murder. He assigns error to the trial court's jury instruction that the affirmative defense of extreme emotional disturbance (EED) does not apply to aggravated murder; to its denial of his motions for acquittal, in which he objected to the prosecution's failure to present sufficient evidence to corroborate his confessions; to the prosecution's alleged comments on his failure to testify; and to the court's failure to merge his murder convictions. We affirm.

In October, 1989, the victim drove to Portland from her home in Albany with plans to spend the night there. She met her ex-boyfriend, Amell, at a mutual friend's houseboat on Hayden Island. She and Amell went out to dinner. While in the parking lot of a lounge at about 1:30 or 2:00 a.m., they had a fight, during which Amell threw her against a wall and put his hands around her neck. She returned to the houseboat and collected her belongings. When she left the houseboat, she told a friend that she and Amell had quarrelled and that someone was waiting for her in the parking lot. The victim then met defendant and drove to Portland, bought some cocaine and went to his house to smoke it. He asked her to spend the night, but she declined. As he was driving the victim back to her car, he turned right instead of left, which would have taken them to her car. He then stopped his car and asked her to "give him some head." She complied but, when she tried to raise her head, he pushed it back down and she then bit his penis. He hit her on the head and then pulled her out of the car and into bushes, where he killed her by strangling her with his belt and hitting her repeatedly with a rock.

The next day defendant told a friend that he had killed the "girl at Hayden Island." The friend contacted the police and had another conversation with defendant while wearing a body wire. Defendant told the friend that he had hit the victim after becoming angry that she had bit him and that he had panicked because he believed that she had bitten off his penis. He also said that he had killed her to cover up his actions.

Defendant was charged with eight counts of aggravated murder. In the jury trial, he was convicted on six counts of the lesser included crime of intentional murder and on two counts of aggravated murder. The two counts of aggravated murder on which he was convicted were under ORS 163.095(2)(d) for personally and intentionally committing a homicide in the course and furtherance of a felony and under ORS 163.095(2)(e) for committing a murder in an effort to conceal the identity of the perpetrator of a crime.[1]

■ Defendant first assigns error to the jury instruction that EED is available as a partial defense to intentional murder but not to aggravated murder.[2] He argues that EED, which is expressly made a defense to intentional murder under ORS 163.115(1)(a), is also a defense to felony murder under ORS 163.115(1)(b) and to aggravated murder under

---

[1] Aggravated murder is defined by ORS 163.095:

"As used in ORS 163.105 [sentencing options] and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"'* * * * *

"(2)(d) Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b).

"(e) The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime."

Aggravated murder, as defined in subsection (2)(d), is commonly referred to as aggravated felony murder.

[2] The court instructed the jury:

"When you deliberate you should first consider the charged offense of aggravated murder as alleged in each count. If you find the defendant not guilty on the charged offense or if you cannot agree on a verdict on the charged offense, you should then consider the lesser included offenses in each count of Murder or Manslaughter in the First Degree.

"'* * * * *

"However, before you can return a verdict of guilty of murder, you must find that the defendant has failed to prove by a preponderance of the evidence that the death was caused while he was under the influence of extreme emotional disturbance.

"An intentional homicide that would otherwise constitute murder is reduced to Manslaughter in the First Degree if at the time of the homicide the defendant was under the influence of an extreme emotional disturbance.

"'* * * * *

"The affirmative defense of extreme emotional disturbance does not apply to the crime of Aggravated Murder. The affirmative defense of extreme emotional disturbance does apply to the crime of murder."

ORS 163.095(2). He contends that, because EED is available as a defense to intentional murder, it applies to any form of aggravated murder that includes intentional murder as a lesser included offense.

■    In construing a statute, we first examine the language of the statute itself. ORS 174.010; *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991). The language of the pertinent statutes here does not support defendant's argument. The crime of "murder" is defined in ORS 163.115(1) to include acts that are commonly referred to as "intentional murder" and "felony murder."

"Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder:

"(a)    When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance;

"(b)    When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(F)    Kidnapping in the first degree as defined in ORS 163.235."

Notably, the statute specifically provides that EED is a defense to intentional murder, but not to felony murder.

In addition, ORS 163.135(1), which governs the EED defense, provides that it is available only as a partial defense to intentional murder under ORS 163.115(1)(a):

"*It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) [intentional murder] that the homicide was committed under the influence of extreme emotional disturbance * * *.*" (Emphasis supplied.)

There is also nothing in the language of the aggravated murder statute itself, ORS 163.095, *see* n 1, *supra*, that makes EED available as a defense to aggravated murder.

We held in *State v. Reams*, 47 Or App 907, 913, 616 P2d 498 (1980), *aff'd* 292 Or 1, 636 P2d 913 (1981), that the defense is available only in intentional murder cases:

"On its face, ORS 163.115(2),[3] * * * appears to allow the consideration of extreme emotional disturbance in mitigation only in cases of intentional murder under ORS 163.115(1)(a)."

In *State v. Atkinson*, 80 Or App 54, 58 n 3, 722 P2d 9, *rev den* 302 Or 36 (1986), we commented that,

"although the legislature has expressly provided that defendants charged with intentional murder under ORS 163.115(1)(a) may assert the affirmative defense, it has not so provided for defendants charged with aggravated murder."

Defendant appears to recognize that the language of the statutes does not support his argument, but asserts that an inconsistency is created by ORS 163.118, the manslaughter statute, which provides, in part:

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"* * * * *

"(b) It is committed intentionally by a defendant under the influence of extreme emotional disturbance *as provided in ORS 163.135*. The fact that the homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing the homicide which would otherwise be murder to manslaughter in the first degree and need not be proved in any prosecution." (Emphasis supplied.)

Defendant reasons that, because ORS 163.115 expressly excepts homicides that come within ORS 163.118 from constituting murder, EED is a defense to all murder charges. We do not find his argument persuasive. ORS 163.118 concerns the defense as provided in ORS 163.135, which expressly limits its application to murder under ORS 163.115(1)(a).

---

3 ORS 163.115(2) provides an affirmative defense to felony murder under ORS 163.115(1)(b) that does not include EED.

Relying on legislative history, defendant argues alternatively that, when the legislature made EED an affirmative defense to intentional murder in 1981, it unintentionally failed to specify that it was also applicable to aggravated murder. We are not at liberty to fill in perceived legislative omissions. ORS 174.010; *Portland Adventist Medical Center v. Sheffield*, 303 Or 197, 200, 735 P2d 371 (1987). Moreover, the inclusion of a specific matter suggests a legislative intent to exclude related matters that are not mentioned. ORS 174.010; *Roseburg Forest Products v. Wilson*, 110 Or App 72, 76, 821 P2d 426 (1991). In view of the legislature's failure to include language in ORS 163.095 making EED available and the language of ORS 163.135 that specifically provides that it is available as an affirmative defense to murder for purposes of ORS 163.115(1)(a), we conclude that EED is not a defense to aggravated murder.

■　　Defendant also assigns error to the denial of his motion for acquittal on count 6, which charged that he killed the victim in an effort to conceal his identity as the perpetrator of assault in the fourth degree, and on count 8, which charged that he killed the victim in the course of a kidnapping in the first degree and in immediate flight from previous crimes. He contends that the state failed to present any evidence corroborating his confession that he had kidnapped the victim or that he had assaulted her other than during the act that resulted in her death.

ORS 136.425 provides that a confession or admission is not, by itself,

"sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed."

In *State v. Lerch*, 296 Or 377, 393, 677 P2d 678 (1984), the Supreme Court held that "some other proof" means that "there is enough evidence from which the jury may draw an inference that tends to establish or prove that a crime has been committed."

There was corroborating evidence that defendant committed assault in the fourth degree. ORS 163.160(1) provides:

"A person commits the crime of assault in the fourth degree if the person:

"(a)   Intentionally, knowingly or recklessly causes physical injury to another; or

"(b)   With criminal negligence causes physical injury to another by means of a deadly weapon."

The medical examiner testified that the victim had suffered blows to her face that probably were caused by a fist and that she had received injuries to the neck such as would occur from a "forearm or leg or something with such force as to cause extensive hemorrhage into the soft tissues of her neck." He indicated that those injuries were consistent with a person's having been dragged. He also testified that some of her injuries appeared to have occurred before she was strangled and beaten. That was sufficient evidence for the jury to conclude that the crime of assault occurred before and while defendant dragged the victim from the car.

Defendant also argues that, because there was evidence that the victim's ex-boyfriend had hit her on the face and choked her, the evidence of an assault did not corroborate his confession. However, corroborating evidence need only tend to prove that the crime confessed to occurred. It does not mean that there can be no contradictory inference. It is for the jury to decide what testimony and evidence to believe.

■ ■   There was also evidence that corroborates defendant's confession to committing the crime of kidnapping in the first degree. A person commits that crime if the person commits kidnapping with the purpose of causing physical injury to the victim. ORS 163.235(1).[4] ORS 163.225(1) provides:

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a)   Takes the person from one place to another[.]"

_____

[4] ORS 163.235(1) provides:

"A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"* * * * *

"(c)   To cause physical injury to the victim[.]"

The evidence is that defendant interfered with the victim's liberty without her consent. Her body was found in a location off the road a long distance from her car, and the injuries on her body indicated that she had been dragged to that location. That is sufficient to corroborate defendant's confession to kidnapping the victim. *See State v. Nulph*, 31 Or App 1155, 1164, 572 P2d 642 (1977).

Defendant also argues that he was entitled to a judgment of acquittal on count 8 of the indictment, aggravated felony murder, which was based on the underlying felony of kidnapping in the first degree. We conclude that there was sufficient evidence to support this conviction and that the trial court did not err in denying defendant's motion.

■ Defendant next assigns error to the denial of his motion for a mistrial after the prosecution made this comment in closing argument:

> "Now, I've talked about the State's case. You also had a chance to hear the defense case. On Friday you heard the defense case. I'm not going to talk a lot about it. You might have noted that we didn't present any rebuttal witnesses. *You searched in vain through the defense case for a single reference to [defendant]*. You searched in vain in the defense case for anything about what happened over here in his houseboat or here out on the road. Nothing at all about that. *The defense didn't want to talk about the crimes that are charged here*." (Emphasis supplied.)

Defendant contends that the statement is a comment on his failure to take the stand and testify in his own behalf. He argues that the prosecution insinuated that he had avoided testifying because he was guilty and, therefore, was afraid to testify. In response to defendant's objection, the trial court told the prosecution to use more discretion. It did not give a curative instruction, but said it would allow equal latitude to defendant.

In *State v. Farrar*, 309 Or 132, 164, 786 P2d 161 (1990), the Supreme Court held:

> "A motion for mistrial is 'addressed to the sound discretion of the trial judge,' who is in the best position to assess and rectify the potential prejudice to the defendant." (Citations omitted.)

We conclude that the court did not abuse its discretion in denying defendant's motion for a mistrial. Although the prosecution's statement *could* have been interpreted to mean that the defendant "didn't want to talk about the crimes," the more reasonable interpretation is that defendant's witnesses did not testify about the crimes and that defense counsel did not discuss the crimes in his opening or closing arguments. That interpretation is supported by the sentence, "You searched * * * for a single *reference to [defendant]*." (Emphasis supplied.)

■ Defendant's final assignment is that his convictions on counts 1 through 8 should have been merged into one conviction, rather than treated as eight separate convictions that were merged into count 8 for sentencing. Citing *State v. Madison*, 93 Or App 182, 760 P2d 1384 (1988), he asserts:

> "[C]ase law establishes that separate verdicts, convictions and sentences for alternative theories of aggravated murder premised upon a single homicide must merge into a single murder as there is only one homicide."

Defendant misreads *Madison*. In that case, the defendant was charged with aggravated felony murder by alternative means. The jury was instructed on several underlying felonies, but it did not indicate by its verdict which of the alternate felonies defendant had committed. It simply returned two aggravated felony murder guilty verdicts. It was that issue that *Madison* addressed, not whether the murder of one victim could result in multiple murder convictions.

Moreover, *Madison* was decided before ORS 161.067 was enacted. *State v. Sargent*, 110 Or App 194, 196, 822 P2d 726 (1991). ORS 161.067(1) provides that there are as many separately punishable offenses as there are separate statutory violations that require proof of an element that the others do not. *State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989). Defendant was convicted on six counts of murder and two counts of aggravated murder. Although every count involved the same victim, each count charged that defendant had violated a different statute, and each required proof of an element not required in any of the other counts.

Affirmed.

**De MUNIZ, J.,** dissenting.

A prosecutor is permitted to argue as zealously and as forcefully as necessary to persuade the jury to find a defendant guilty. Pointing out the weakness of the defense presented by an accused is a necessary and expected prosecutorial tactic. However, a criminal defendant has an absolute constitutional right not to testify and the failure to do so cannot in any way be used against the defendant. Or Const, Art I, § 12; *State v. Wederski*, 230 Or 57, 368 P2d 393 (1962). Because of that constitutional right, a prosecutor's attack on the defense case cannot include any reference, no matter how veiled or fleeting, to the defendant's failure to testify.

Although the majority concludes that "the more reasonable" interpretation of the prosecutor's comments in closing argument is that they related to defense counsel's argument and defense witnesses, it recognizes that the "statement *could* have been interpreted to mean the defendant 'didn't want to talk about the crimes.' " 117 Or App at 122. (Emphasis in original.) Given the context of the statement, that is the only reasonable interpretation. The prosecutor made the comments immediately after he had read extensively and in detail from defendant's statements that had been recorded on the body wire. Those statements gave a graphic account of the sexual encounter that preceded the victim's death and her death. In that context, the jury could only have understood the prosecutor to be arguing that the defense that had been presented was not credible, because defendant, the only witness to the victim's death and the events leading to it, did not take the stand and explain or rebut that evidence.

A prosecutor has the responsibility to ensure that a criminal prosecution, while vigorous, is also fair. *State v. Jones*, 279 Or 55, 63, 566 P2d 867 (1977). The prosecutor's statements violated defendant's constitutional right not to testify and denied him a fair trial. I would reverse.

Furthermore, I do not agree that we should reach the issue of whether the affirmative defense of extreme emotional distress (EED) applies to a charge of aggravated murder. Neither do I agree with the majority's analysis of that issue.

Defendant was charged with eight counts of aggravated murder and six counts of murder. The jury was instructed that the defense of EED did not apply to aggravated murder. However, it was also instructed on the elements of EED and that the defense could reduce intentional murder to manslaughter. The jury found defendant guilty on six counts of murder and two counts of aggravated murder.[1]

All of the counts arose from the same facts. Even if the jury had been instructed that EED applies to aggravated murder, it could not have rejected the defense in convicting defendant of intentional murder charges and have accepted it on the charges of aggravated murder. Because the jury clearly rejected the defense, I would hold that any error in the instructions is harmless.

Assuming that the error was somehow not harmless, I disagree with the majority's analysis that the legislature's failure to state specifically that EED is a defense to aggravated murder means that the defense is not applicable to aggravated murder.

ORS 163.005(2) provides that " '[c]riminal homicide' is murder, manslaughter or criminally negligent homicide.'' Aggravated murder is not specifically listed as "criminal homicide." That is because aggravated murder is one type of "murder." ORS 163.095 provides that aggravated murder is "murder as defined in ORS 163.115" and is committed under, or accompanied by, a number of different circumstances. Two aggravating circumstances in ORS 163.095(2) include:

> "(d)  Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b) [*i.e.*, felony murder].

> "(e)  The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime.''

---

[1] The jury found defendant guilty on five alternative theories of intentional murder, one theory of felony murder, one theory of aggravated murder (concealing perpetrator identity) and one theory of aggravated murder (felony murder plus intentional murder).

The error of the majority's reasoning is most easily illustrated by looking at aggravated murder under the circumstances described in subsection (e). That is the theory that supports defendant's conviction for aggravated murder in count 6 of the indictment. Under that theory, the state had to prove that defendant committed murder "as defined in ORS 163.115" and that "the murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime." "The murder" can only be the type that is defined in ORS 163.115(1)(a):

"[C]riminal homicide constitutes murder:

"(a)   When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

The affirmative defense of EED specifically refers to that type of murder. *See also* ORS 163.118 and ORS 163.135.

Count 8, the other aggravated murder count on which defendant was convicted, involves the "felony murder" theory of aggravated murder,[2] which involves a "murder as defined in ORS 163.115" in which the defendant "personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b)." ORS 163.095(2)(d). Ignoring the redundancies, that means that, if a person personally commits intentional murder under circumstances constituting felony murder, he is guilty of aggravated murder. We recognized that in *State v. Atkinson*, 80 Or App 54, 58, 722 P2d 9, *rev den* 302 Or 36 (1986):

"Defendant's contention that intentional murder is a lesser-included offense of aggravated felony murder is premised on the fact that, because intent is an element of aggravated felony murder, all of the elements of intentional murder are necessarily included in the commission of the aggravated offense. With that contention we have no quarrel. *See State v. Coutier*, 286 Or 579, 596 P2d 1278 (1979); *Riley v. Cupp*, 56 Or App 467, 472 n 6, 642 P2d 333, *rev den* 293 Or

---

[2] The court merged count 8 with count 6, but the judgment order is curious. It reads, "IT IS ADJUDGED that counts 1, 2, 3, 4, 5, 7 and 8 be merged for purposes of sentencing, with counts 1, 2, 3, 4, 5, 7 and 8 merging into count 6." Defendant makes no argument that his only aggravated murder conviction is based on an intentional murder to conceal his identity.

146 (1982). Therefore, the state's failure to prove all of the elements necessary to convict an accused of intentional murder precludes a conviction for aggravated felony murder. It does not, however, preclude a conviction for felony murder, which is also a lesser-included offense of aggravated murder and for which extreme emotional disturbance is no defense. *See State v. Reams* [47 Or App 907, 616 P2d 498 (1980), *aff'd* 292 Or 1, 636 P2d 913 (1981)]. Therefore, if extreme emotional disturbance may be asserted as an affirmative defense to aggravated felony murder, because intentional murder is a lesser-included offense of that crime, then a defendant who successfully asserts the defense would be guilty of felony murder only, not aggravated felony murder." (Footnote omitted.)[3]

However, in *Atkinson*, the defendant's only argument was that he was entitled to a jury instruction that told the jury that it could use EED to reduce aggravated felony murder directly to manslaughter. That is wrong.

Whether intentional murder is described, as in *Atkinson*, as a lesser included offense of aggravated felony murder, or is described as making up a set of elements of aggravated felony murder, a person cannot be convicted of aggravated felony murder unless he has committed intentional murder, as defined in ORS 163.115(1)(a). The affirmative defense of EED applies to intentional murder.

Defendant was entitled to have the jury instructed that EED applies to intentional murder and, to the extent that the state must prove intentional murder in order to prove all of the elements of aggravated murder, EED could be considered by the jury.[4] Consequently, I would hold that EED can reduce aggravated murder to murder and, in some cases, to manslaughter.

---

[3] The footnote omitted is the passage quoted in the majority opinion, which points out that EED is not expressly mentioned in connection with aggravated murder.

[4] Properly instructed, a jury that accepted defendant's EED defense to count 6 (murder committed in an effort to conceal his identity) could have found that aggravated murder was not proven, because he had not committed murder but had committed manslaughter in the first degree. On count 8 (felony murder plus intentional murder), a jury could have found that defendant had not committed aggravated murder, because he had not committed an intentional murder. However, it could find defendant guilty of felony murder as a separate crime or as a lesser included offense of aggravated murder. *State v. Atkinson, supra.*

Joseph, C. J., and Buttler and Durham, JJ., join in this dissent.